The next matter on our calendar is Paul White v. United States Securities and Exchange Commission. Thank you. Professor Romberg, I thought the students were going to argue, or did they just write the briefs? Yes, John Romberg for Seton Hall Law School Center for Social Justice, for Petitioner Paul White. And I apologize, unfortunately, the students who wrote the briefs have graduated, and they started their training and orientation at their firms yesterday, and they decided it would be impolitic. That's too bad. I mean, we like to see you, but we much prefer to see the students. Yes, understandably enough. But you're stuck with me, unfortunately. So in this case, the sanctions order against White was unquestionably unconstitutional under the Appointments Clause. And the only question is whether this Court is insulated from reviewing that question. The SEC argues that it is because there are jurisdictional barriers, or in the alternative, at least, the SEC argues, mandatory barriers to this Court's consideration which are not subject to equitable exceptions. In fact — But even if they are subject to equitable exceptions, if they're mandatory but not jurisdictional, probably there are equitable exceptions. But the question is, are there any equitable exceptions in this case that should be considered? Yes. There are two sets of issues. One is the question is, one question is, can this Court consider either whether White urged his arguments before the commission or had reasonable grounds for failing to do so, or if for some reason he didn't, whether there are equitable exceptions that allow him to go forward even without satisfying the statutory mandate. And then there's the second set of questions, which is, does he satisfy those equitable exceptions? Does he — did he either urge, sufficiently urge the issue because he presented the agency with a meaningful opportunity to address his Appointments Clause issue? So what does it mean to urge something in a brief that is then not accepted because it isn't conforming, and which he could have conformed to? I mean, you know, do we say that because it was in that brief the SEC should have looked at it? Or do we say he could have made the brief conforming? He could have just said to the SEC, ignore all the parts which are excessive. So, you know, did he urge it? He used the words in the brief that wasn't accepted. So what does that mean? Yes. He did urge it. Either in that brief — well, let me take a step back. The legal standard for urging, which the SEC does not contest, the Third Circuit in Hennessy explained that to urge something under 78YC1 requires that the agency, the commission, have been afforded a meaningful opportunity to address the issue, after providing ample opportunity for the petitioner to raise the argument. And, indeed, the D.C. Circuit and the Ninth Circuit apply a very similar but even broader standard, saying that the phraseology of 78YC1 doesn't require the petitioner to have raised the issue, that 78YC1 is phrased passively, that the issue have been raised. So both the D.C. Circuit and Ninth Circuit have held that as long as the issue has been put before the agency, even not by the petitioner, then the issue has been raised, because the purpose of issue exhaustion is to afford the agency an opportunity to address the issue before the court weighs in. But you're saying that the agency is not in a position to say that some arguments are waived even though they are not properly made, that if they know of the argument, they must consider it even though it wasn't properly made before it. That's essentially what you've just said. Two responses, Your Honor. First, I'd argue no, the agency can consider it to be waived, but that doesn't bar this Court from addressing the issue if it finds that the dictates of 78YC1 have been met. Even more fundamentally, we don't we may, but we don't need to. If he urged the argument sufficiently because he afforded the agency a meaningful opportunity to address the issue, opportunity, of course, doesn't require that the agency actually have taken up that opportunity. But he either had the opportunity or had reasonable grounds for not doing so. Something we haven't gotten to yet is whether his lack of paper prevented him from raising it. But sticking to the question of whether he actually urged it, so first, in the overlength brief which was stricken, that provided a meaningful opportunity. But even if this Court is hesitant to go down that route, he did urge the argument in other filings. In his reply brief to the commission, which was timely filed under the prison mailbox rule, the SEC does not contest that it was timely filed, in which he again raised the Appointments Clause. Sotomayor, was that brief compliant? That brief was compliant. That brief was not stricken. I understand the question, given that if a brief is stricken, as his overlength brief was, there's a more plausible argument that that wasn't urged. I would say that the meaningful opportunity was afforded in any of the briefs. Do we treat anything as being raised when it's raised first in a reply brief? This was — Now, this is odd, because, of course, it wasn't raised first in the reply brief. It was raised first in a noncompliant brief. But normally, if something is raised in a reply brief, we don't treat it as being raised, do we? Not if it's a merits brief, but here it was urged in the reply brief. And something else, it was also urged in his notice of appeal. The commission, in September, issued the final dismissal. He filed his notice of appeal, which, under the unusual statutory structure of 78YA, the commission retained jurisdiction. After he filed his notice of appeal, which once again raised the Appointments Clause in a timely, compliant filing, not stricken from the record, while the commission had jurisdiction, the commission entered a final order in September. In October, he filed his notice of appeal while the SEC had jurisdiction. In December, the SEC issued a corrected final order in which, apparently having been prompted by his notice of appeal, it recognized that he actually had addressed the Court's May 20 — the Court's May order — the June order in which it granted an extension of time. And in that notice of appeal and in the reply brief, he once again raised his Appointments Clause argument. Roberts, the proper way to raise the argument would have been in a brief in support of the Petition for Review, isn't that right? Yes. And there's no question that that wasn't done here, right? It was raised, it was stricken, the question for this Court is whether it was sufficiently urged, or if not, and — So the whole question, I think, is sufficiently urged, properly raised. Doesn't that all sort of assume a compliance with the rules? No, because as the Third Circuit, D.C. Circuit, Ninth Circuit have held, what urged requires is that the agency have a meaningful opportunity to address the issue. Opportunity obviously doesn't require that it actually have been considered. For all of those filings, satisfy the urged requirement. And the alternative, which we haven't discussed yet, he had reasonable grounds to fail — in failing to file a timely compliant brief, because the prison, on May 22, after the initial short grant of — How many things under your Sixth and Ninth Circuit, is it, a point of view, must the agency consider if it has knowledge of them, even though they weren't raised before them in a proper filing? What the D.C. and Ninth Circuit requires is that the agency actually have considered the issue, even if it wasn't the Petitioner who raised it. And here, clearly in Lucia — I want to know how much of a door that opens, how much that creates a situation in which we say, because the agency had knowledge, it should have done something, which could open up a huge number of cases, or whether this is true only of some limited number of things, like a constitutional challenge to their particular action. I mean, you know, that's a much narrower kind of thing, which one could say, if they knew of this challenge, they should have considered it, because it was a narrower one. I'm just trying to see how much of a door you're making us open. Certainly, the fact that the agency was proceeding outside the bounds of what it was constitutionally entitled to do, as this Court recognized in Touche Ross, certainly aids the argument. But the D.C. Circuit and the Ninth Circuit approach, which this Court has never rejected, says the Petitioner does not — in order for the issue to have been urged, not for the Petitioner to urge the issue, that's not what 78YC1 says. It says for the issue to have been urged, those courts say that some entity, not the Petitioner, needs to have raised the issue, and as here, for the agency — Sotomayor, was it raised, if not by the Petitioner, in this case? In Lucia, the agency decided the issue was then appealed to the Supreme Court, which the agency was wrong. Because the purpose of it — Do you think that case is enough to have raised the issue here? Is that what you're saying? It's enough to mean the issue was sufficiently urged in combination with our other arguments, and in the alternative, that he had reasonable grounds, even if we're wrong about that. He had reasonable grounds, because on May 22nd, after he finally got enough paper together, and he submitted — this is in the Special Appendix, the Supplemental Section, at 61, the prison guard seized all his paper. He had two sheets of paper, and when he went to the library, he could get two more sheets a day. And this happened after — He filed an awful lot of stuff from prison, so that the notion that he couldn't file a crucially important thing because he didn't have paper is a little hard to take when he was filing anything else. He could have filed this and not an awful lot of the other stuff that he filed. The other things that he filed, including his over-length brief, were before the May 22nd seizure of paper. He had paper before that, not as much as he wanted, but he had over 100 pages. On May 22nd, he was left with 10 pages. He could go to the law library one hour a week, and he could go — when he was allowed to go to the law library, he got generally two and occasionally four pieces of paper. So prior to May 22nd, he had more paper. After that point, as he put into the record, he did not have the paper to file a meaningful brief. He didn't reasonably — he had reasonable grounds as a pro se inmate with extremely limited access to the law library, and it would be — the issues in this case are rather complicated, with one hour a week for a pro se inmate to understand. Did the commission dismiss his noncompliant brief after the decision in Lucia? What is the timeline? It dismissed his brief after the agency's decision in Lucia. No, after the Supreme Court. But I believe before the Supreme Court's decision in Lucia. After the agency — well, the agency found that that appointments clause didn't apply in Lucia. Exactly. So that — They weren't on notice that the earth had shifted beneath their feet by the time they found this brief noncompliant. Is that correct? That's correct. The Supreme Court had not yet decided. But what the agency knew full well is the issue had been put before it. It had been urged to the commission, even — accepting for the sake of argument — not by White. It had been urged to the commission. In one sentence, the agency could have said the appointments clause argument is invalid, citing their — Was there a circuit split at the time the Supreme Court took this case? I believe there was. So they were on some notice that the issue was around and about. Absolutely. Absolutely. And from Mr. White, who repeatedly attempted to get the issue — he filed recusal motions with the ALJ in his notice of — in his petition to the commission. He said, I'm going to raise my appointments clause issue, and whatever you decide, I'm taking this to the Second Circuit. In his overlength brief, which was stricken, in his motion for an extension of time saying, I want this because I want to raise my appointments clause issue, in his reply, in his notice — Was the one place that he had to do it to exhaust his remedies, he didn't do it? What he needed to do was urge to the commission and afford the commission a meaningful opportunity. And through all those mechanisms, he did. And under the D.C. Circuit, Ninth Circuit's approach, which this Court should adopt if it finds it necessary, the question is not whether he urged it. The question is whether it was urged. The D.C. Circuit specifically points out that 78YC1 is phrased passively, whether the issue has been urged, because the purpose of 78YC1 is to afford the agency an opportunity to address the issue before this Court does. And the agency had ample opportunity and, in fact, had already addressed the issue and decided it. And finally, even apart from all the arguments we've considered so far about what's necessary for urging by White or by someone, and whether he had reasonable grounds, because on May 22nd, from that point forward, he did not have adequate paper, there's also the question of whether — Well, how much adequate paper do you need if this was the issue that he wanted to raise to say the SEC is not constitutionally appointed? That doesn't take more than half a sheet of paper, doesn't it? I mean, if this is the issue, you know, I think there's very serious things here, but the notion that he could not do it seems to me really quite strange, because it's something that you have said he repeated and wanted to say, and all it takes is half a sheet of paper. I mean, I hate the fact he wasn't given more paper for any number of other issues, but for this issue, I don't see how that cuts. And the SEC has argued that he theoretically could have, if he had one piece of paper, filed it. But the question isn't theoretically could he have raised that one issue when he had seven other issues that he wished to raise and that he's raised in his pro se briefing, which we haven't advanced. He wanted a constitutionally adequate opportunity to raise the full set of arguments he intended to raise. Could he theoretically have done otherwise and filed one piece of paper? And would he be in a better position now? Yes. Does that mean he didn't have reasonable grounds? No. And he, after May 22nd, the supplemental appendix, page 61, he actually introduced the prison form showing that the paper was seized after that point and he had very limited paper. And even if all these arguments are wrong about what was urged and whether he had reasonable grounds, the final question is whether the agency abused its discretion or was arbitrary and capricious in refusing to consider the timely filed reply brief. It apparently ignored the prison mailbox rule, and it also failed to explain why it was not. And so it's not just characterizing the reply brief as a merits brief, characterizing the notice of appeal as a merits brief, or characterizing it as a motion for reconsideration, which it could have done, and instead it thought that he was willfully disregarding commission procedures when the record shows, if anything, White was zealously and perhaps idiosyncratically attempting as best he could to get this issue before this Court and then perhaps the Supreme Court. And either under the Administrative Procedure Act, abuse of discretion, standard of review, or under 78YA5, which expressly authorizes this Court on whatever conditions and terms it sees fit to remand to the agency to consider facts that the agency didn't consider that he raised, because things changed in the reply brief that was timely under the prison mailbox rule. The agency never evidenced that it considered that. He said, I need seven weeks from when I get the commission's decision, and explained the changed circumstances and how he had even more limited paper and how much paper he needed. The agency never considered that, never considered why he didn't file a timely compliant brief. And... The time is long since expired. However, you do have two minutes for rebuttal. We'll hear from the SEC. Thank you. Good morning, Your Honors. May it please the Court, Rachel McKenzie for the Commission. I want to start by reorienting the Court's focus on what's actually at issue here. The Commission issued an order dismissing Mr. White's review proceedings because he failed to file a compliant brief. If that was within the Commission's discretion, and we argue that it was, then this Court would affirm. If it was an abuse of discretion, then the Court would remand. I don't think there's any real dispute about that. So the focus in this case should be purely on whether the procedural basis on which the Commission dismissed this case, that is, that Mr. White never filed a compliant brief, was within its discretion. It was. The counsel here raises the issue of a compliant reply brief. I'm glad Your Honor raised that because I want to clarify what that is. My colleague keeps referring to it as a reply brief. What it was, was, I'll go through the timeline a bit just to give the Court the full picture. Mr. White filed a 198-page over-length brief at the end of April 2017. The Commission rejected that brief in May of 2017. Rejected it because it was over-length? Because it was over-length. And it said, you can refile a compliant brief by the beginning of June. Mr. White filed a motion for reconsideration or for more time and said, either reconsider accepting my over-length brief or give me more time to file a compliant brief. And the Commission said, we're not going to accept the over-length brief, but yes, you can have your requested extension to file a compliant brief. It was at that point that Mr. White's reply in support of his motion for reconsideration or for an extension came in. That was not a merits-based filing. That was a reply in support of a motion that the Commission had already granted. So you declined to consider it a reply brief? The Commission had already decided the issue. The motion came in. The Division of Enforcement responded and said, we don't object to giving Mr. White more time. So the Commission went ahead and decided the motion and said, Mr. White can have his requested five-week extension.  motion. And you say he did not style this reply brief as the brief which the Commission gave him more time to do? No, he absolutely did not, Your Honor. I would direct Your Honor to Supplemental Appendix, page 63. Respondents reply to the Division's motion for reconsideration and to extend time to refile brief. It was not a merits brief at all. But do you admit that in this document, however we characterize it, he raised the issue of the Appointments Clause? He said, as he had said several times, I intend to raise this issue. But of course, Your Honor, he never followed through on that. He didn't file a compliant brief. You don't deny that the Commission was aware of the issue? The Commission was aware of the issue, Your Honor, but the Commission doesn't prejudge issues without the benefit of the adversarial process. I don't think I have to spend a lot of time convincing this Court that the briefing is a key component of the adversarial process. Why? Because that's how the Commission engages with issues meaningfully, reaches a merits based decision that then facilitates this Court's review. That never happened in this case because Mr. White never filed a compliant brief. Most of my colleague's presentation was all about this issue exhaustion question, which is actually beside the point. Mr. White never completed the agency review process at all as to any issue because he never filed a compliant brief. Well, but the agency dismissed ultimately the case as a sanction and the question which one could pose is whether that ultimate dismissal as a sanction was appropriate with respect to a pro se person who was in jail and was filing any number of things. That is, the initial action with respect to the non-compliant brief is certainly okay and the granting of more time is certainly okay. The question is whether when at the end of this whole thing and when a fundamental constitutional issue had been brought to their knowledge, it was appropriate for the Commission as a sanction to say, look, you've never done what you should have done and so we're not going to give you any more chance to properly raise an important issue which we know of. I think your Honor is exactly correct. That is the right way to consider this case and I think it was absolutely within the Commission's discretion to do that. It operated entirely reasonably in this case. It granted the relief Mr. White requested. It gave him more time to file a compliant brief after he had already violated the rules by filing a non-compliant brief. So now we're at his second chance to file a compliant brief and he didn't do it. So the Commission dismissed. But even at that point, there was an opportunity to file a motion for reconsideration under the Commission's rules, Rule 470, which we know Mr. White knows how to do because he did it before and he never did it. So under those circumstances, on the record in front of it, and I think the Commission made clear and I think the Court should be cognizant of the fact, too, that this wasn't the first time or the second time or the third time Mr. White had failed to comply with the Commission's procedural rules. As the Commission noted, this was entirely consistent with his default before the Administrative Law Judge for failing to ever fully answer the Administrative Order instituting administrative proceedings. And on that record, on that basis, the Commission's action here was entirely reasonable. One other thing I wanted to touch on. I do. And so you say that we can decide that without worrying about whether this is jurisdictional, mandatory, bananas, or anything else? Absolutely, Your Honor, because the parties don't dispute, and the Supreme Court just made clear in a case called Smith v. Berryhill, no matter what, this Court has decided that this dismissal was proper. And the answer to that question is dispositive. Because again, if Your Honor say, yes, the Commission acted within its discretion in doing what it did, then you would affirm. And if you say, no, the Commission abused its discretion, then you would send it back to the agency. And so there is no need to get into the question of certainly not issue exhaustion, but to be clear, I do want to focus on one thing related to issue exhaustion, even though that is not the fulcrum on which this case turns, as we've just been discussing. My colleague spent a lot of time talking about the Commission had the opportunity to review, the Commission had the opportunity to review. He's invoking two cases, the D.C. Circuit's decision in a case called Blount, and the Ninth Circuit's decision in a case called Sachs. Neither of those are relevant here. What was going on in those cases was the Commission's review of a self-regulatory organization rule. What happens in those cases is the Commission opens a comment file, and all sorts of people who might have an issue with the rule the SRO has adopted file comments. And then the Commission decides, yay or nay, on the SRO's rule whether it's going to go into effect or not. In those circumstances, both the D.C. Circuit and the Ninth Circuit have said, as long as somebody in that proceeding, in that comment file, raises the issue and the Commission addresses it, then, of course, the Court can review it. That is entirely different than the kind of adversarial proceeding that was at issue here. Nobody in this case, because Mr. White is the only litigant before the Commission, raised these issues. Breyer, There is one odd thing, though, in this. What you say sounds absolutely fine, yeah, they didn't file it, but the Commission did do some action in response to these noncompliant briefs. You know, that's the thing that keeps puzzling me, that while they said there was nothing before them and could properly say that, they did do something which no one is objecting to in reply to these non-things. I think Your Honor is referring to the fact that the Commission vacated what are called the collateral bars. That is something that the Commission does automatically ever since the D.C. Circuit issued an opinion in a case called Bartco. What that does not indicate, and the Commission did not in this case engage with the ALJ's reasoning in any way. All it said was, okay, I have this case in front of me where an ALJ has imposed collateral bars. Since Bartco, in every single case, we vacate those bars, so that's what we're doing here. So you're telling me that there are some things that the Commission can do on its own motion. That's absolutely correct, Your Honor. The Commission always has discretion to review ALJ decisions on its own. And it's a discretionary issue. Yes. So one can say it had discretion if it wanted to, to say that this was not a constitutional action, had it wanted to. That's correct, Your Honor. The Commission had discretion, but it wasn't required to do what Mr. White is asking for. Okay. I did also want to make one point on this idea of opportunity to review. I would urge Your Honors to look at the Supreme Court's decision in a case called Woodford. The Supreme Court made very clear there that what constitutes an opportunity for review is following the agency's procedural rules. It's specifically, the Court specifically said an agency does not have the opportunity to engage with the merits of an issue if a litigant does not follow the agency's rules. Counsel, if we view a 78YC1 as a claim processing rule and not jurisdictional, does that make a difference in your analysis? It doesn't, Your Honor, for the reasons I said, for two reasons. One is the reason I was discussing previously, which is that this case doesn't turn either way on issue exhaustion. Well, then he would get the reasonable exceptions. Right. But again, this is not an issue exhaustion case because Mr. White never completed the agency review process at all. But even putting that aside, no, it doesn't change the analysis, because even if the issue exhaustion provision, 25C1, Exchange Act 25C1, or the comparable provision in the Investment Advisers Act, even if it's not jurisdictional, it's mandatory. And for that, I would actually direct Your Honor's to Judge Calabresi's concurrence in denial of rehearing en banc in a case called Xiong, in which he's — in which Your Honor specifically said there are very small, if any, differences between a mandatory and a jurisdictional issue exhaustion requirement. So, no. For both of those reasons, it doesn't change. But if it's reasonable explanation, he couldn't get paper. No. So reasonable grounds is not an equitable exception you'd be reading into the statute. It's actually a textual exception that Congress has provided for. Again, and I know I'm sounding repetitive on this, but this isn't an issue exhaustion case, so whether or not he complies with that doesn't actually resolve this issue. But — Claim processing rule, though. He does get the reasonable exceptions. He — it's not because it's a claim processing rule or not. It's because that's in the statute, that there is a reasonable grounds exception. I do not think that Mr. White satisfies it here, for the same reasons that the commission acted within its discretion in dismissing his review proceedings in the first place, and that is, yes, he's in prison. Yes, he's pro se. He asked for more time. The commission gave it to him, and he didn't file a compliant brief. And not only did the commission give him more time, it then waited two and a half months after his deadline passed before it ultimately dismissed. And even at that point, he could have filed a motion for reconsideration, and he didn't do it. He was pro se, however. He was, but as I explained to Your Honor, he knows how to file motions for reconsideration. He knows how to file all sorts of things. He did it all the time. Thank you. Thank you, Your Honor. We would ask that the Court deny the petition for review and affirm. Professor Romberg, you have two minutes for rebuttal. Okay. So a few quick points, Your Honors. First, although White did style his reply brief as a reply brief and styled his notice of appeal as a notice of appeal, the commission had discretion to either characterize those as merits briefs, at least for the Appointments Clause issues, or as a motion for reconsideration. But nobody is doubting that the commission could have considered it had it wanted  to. The question is, did it have to do it? Was it arbitrary and capricious of them not to? Yes. The question, they weren't obligated, but was it arbitrary and capricious, or does this Court lack an adequate basis to determine whether it was arbitrary and capricious, because the commission never responded to that reply timely under the mailbox rule, and it issued its decision before that filing arrived. But the argument that this was a brief on an issue that the agency decided, and decided in favor of your client, and at that point he could have done something, even just send a piece of paper which said, my argument on the merits is what was styled a reply brief, he certainly could have done that. His motion said, I need at least five weeks, I may need seven, I'll let you know. His reply brief said, as things have turned out, I need more time than you gave me, and the commission never responded. And Your Honor noted that he had been given more time at that point. He had been given, he said, I need at least five, I may need more, I'll let you know. His reply is what said, in fact, I do need more, and that's what the commission never responded to. But the commission did, as Your Honor pointed out. If it is true that he sent that in before the commission decided in his favor on giving more time, then the fact that he acted yet for more time and they gave him some time, you know, that happens all the time. I ask for six months, they give me three months. Okay. Then I have to say something during those three months, I need more time, don't I? But the commission was unaware of the additional facts about the seizure of the paper and the further time that he needed. But moving away from that, the commission in Note 13 did review the ALJ's decision, and the SEC says that that's merely ministerial, but they obviously reviewed the ALJ's decision and its compliance with law. And the question is, he either needs to have pressed the issue or it needs to have been passed upon. So either or. May I just ask one thing? Suppose we decide your way. What happens is this gets sent back, and we say, you know, this is an unconstitutional action. What has the commission done in all these other cases? They have simply sent it back to somebody who was properly appointed, which is important, who then has reestablished exactly what was done before. There are two possibilities. I mean, they could change their mind in this particular case because it is somebody else acting, and it's a new case, and so on and so on and so on. On the other hand, if I were for a moment to stop being an appellate judge and be a judge, the only thing that happens in these cases is that more time is taken before you come out with exactly the same result, isn't it? Isn't that what has actually happened? This Court may believe White is unlikely to ultimately prevail, but the question is whether unconstitutional. That says something about how unfair, in some fundamental sense, it is to stay to some procedural requirements, doesn't it? I mean, if this were the first case in which, as a result of this, the unconstitutionality of an SEC matter were to be decided, then the decision that this was unconstitutional would overwhelm any procedural notions, because that's a fundamental thing. But in terms of what actually happens, aren't we really just sort of spinning – now, I'm an academic. I love to spin my wheels, but aren't we really just? The Supreme Court in Lucia said the error was so fundamental that it couldn't go back to the same ALJ. Of course not. And that, to me, suggests that this Court can't say, well, if it went to another ALJ, he'd – No, no. I'm not saying that unless – What Justice Breyer is suggesting is that this is a wheel-spinning exercise. Tell me why it's not. It's only a wheel-spinning exercise if this Court necessarily concludes that White would be – have a similar sanctions order, and maybe – We don't have to get to the merits, do we? The commission would get to the merits on remand? No, we don't. Correct. What you would do is either recognize the Appointments Clause violation and send it back for a different ALJ, who might but possibly might not reach the same conclusion or at least the same sanctions order. And I don't think, especially given Lucia, that this Court can definitively conclude that he'll lose and the same sanction will be entered. No. But what I'm saying is, how likely is it, if there are procedural grounds on which we can properly say this case is over, that we are doing a fundamental injustice to your client? That's what I'm asking, which is a different question from whether there is a chance that the case will come out differently and all of those things. I would say it's a fundamental injustice to have an unconstitutional sanctions order entered against you by – There's no doubt about that. If that is – okay. We understand each other. One very quick final point. The SEC has effectively conceded that there are no jurisdictional barriers or even mandatory or – mandatory barriers that aren't subject to reasonable grounds analysis. And this Court – there's a circuit split about whether those mandatory claims processing rules are subject to equitable exceptions. This Court is on the side of the split that says, yes, equitable exceptions apply even beyond the reasonable grounds. So at heart, the question here is, given his pro se status, given his multiple attempts to put the arguments before the Commission, given his reply brief and his notice of appeal, and the Commission's failure to explain why it entered the ultimate sanction of dismissal rather than one sentence saying we reject your appointments clause issue, either whether that was arbitrary and capricious or whether remand is appropriate for the agency to explain its decision in these circumstances and why it engaged in that severe sanction. Thank you. Thank you. Thank you both for reserved decision. Very good argument. The last case on our calendar is on submission, so I will ask the clerk to adjourn court. Fourth sense adjourned. Thank you.